﻿Citation Nr: AXXXXXXXX
Decision Date: 04/30/20 Archive Date: 04/30/20

DOCKET NO. 190926-33376
DATE: April 30, 2020

ORDER

Service connection for a cardiovascular (CV) disorder is denied. 

Service connection for chronic myeloid leukemia (CML) is denied. 

Service connection for an acquired psychiatric disorder is denied.

Service connection for a left knee disorder is denied. 

An effective date prior to October 1, 2012, for the assignment of a 10 percent rating for a recurrent left shoulder dislocation is denied.

REMANDED

Service connection for a lumbar spine disorder. 

FINDINGS OF FACT

1. The Veteran had active service from April 1965 to May 1968.

2. A CV disorder was not shown in service; a current CV disorder, diagnosed as coronary artery disease (CAD) and myocardial infarction, was not chronic in service, not continuous since service, was not shown to a compensable degree within one year of service, and is not casually or etiologically related to service.

3. CML was not shown in service, was not chronic in service, not continuous since service, was not shown to a compensable degree within one year of service, and is not casually or etiologically related to service.

4. An acquired psychiatric disorder has not been shown.

5. A left knee disorder was not shown in service; a current left knee disorder, diagnosed as degenerative joint disease (DJD) was not chronic in service, not continuous since service, was not shown to a compensable degree within one year of service, and is not casually or etiologically related to service.

6. The Veteran filed an initial claim for a left shoulder disorder in May 1968 and did not timely appeal the June 1968 rating decision which granted service connection for a left shoulder disability and assigned a non-compensable rating. He filed a claim in October 2015, which resulted in an increase of 10 percent for a left shoulder disability, effective October 1, 2012, the date that the left shoulder disability objectively worsened, and forms the basis of the current effective date.

CONCLUSIONS OF LAW

1. A CV disorder was not incurred in service and is not presumed to have been incurred in service. 38 U.S.C. §§ 1110, 5103(a), 5103A, 5107 (2012); 38 C.F.R. §§ 3.159, 3.303, 3.307, 3.309 (2019).

2. CML was not incurred in service and is not presumed to have been incurred in service. 38 U.S.C. §§ 1110, 5103(a), 5103A, 5107 (2012); 38 C.F.R. §§ 3.159, 3.303, 3.307, 3.309 (2019).

3. An acquired psychiatric disorder was not incurred in service. 38 U.S.C. §§ 1110, 5103(a), 5103A, 5107 (2012); 38 C.F.R. §§ 3.159, 3.303 (2019).

4. A left knee disorder was not incurred in service and is not presumed to have been incurred in service. 38 U.S.C. §§ 1110, 5103(a), 5103A, 5107 (2012); 38 C.F.R. §§ 3.159, 3.303, 3.307, 3.309 (2019).

5. The criteria for an effective date earlier than October 1, 2012, for the grant of a 10 percent rating for a recurrent left shoulder dislocation have not been met. 38 U.S.C. § 5110 (2012); 38 C.F.R. § 3.400 (2019).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 also known as the Appeals Modernization Act (AMA). This law creates a new framework for veterans dissatisfied with VA’s decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program, RAMP, the Rapid Appeals Modernization Program.

The Veteran selected the Higher-Level Review lane when he submitted the RAMP election form. Accordingly, the July 2019 RAMP rating decision considered the evidence of record as of the date VA received the RAMP election form. He timely appealed this RAMP rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ). 

Service Connection Claims 

Service connection may be granted directly as a result of disease or injury incurred in service based on nexus using a three-element test: (1) the existence of a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred in or aggravated by service. See 38 C.F.R. §§ 3.303(a), (d); Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009). 

Service connection may be granted on a presumptive basis for diseases listed in § 3.309 under the following circumstances: (1) where a chronic disease or injury is shown in service and subsequent manifestations of the same disease or injury are shown at a later date unless clearly attributable to an intercurrent cause; or (2) where there is continuity of symptomatology since service; or (3) by showing that the disorder manifested itself to a degree of 10 percent or more within one year from the date of separation from service. See 38 C.F.R. § 3.307.

 

Cardiovascular Disorder and Chronic Myeloid Leukemia

The Veteran contends that a CV disorder and CML were incurred as a result of Agent Orange exposure during the Vietnam War. As these issues are decided on the same legal basis, they will be discussed together.

Veterans who served in units that, as determined by the Department of Defense (DoD), operated in or near the Korean Demilitarized Zone (DMZ) between April 1, 1968, and August 31, 1971, are considered to have been exposed to herbicides. However, the record reflects that the Veteran served in Korea from September 1965 to October 1966. As this is outside the required period for herbicide exposure, a CV disorder and CML are not presumed to have been incurred as a result of herbicide exposure. 

In addition, the AOJ rendered favorable findings that the Veteran was diagnosed with CAD in 2017, myocardial infarction in 2018, and CML in 2016. Under RAMP, favorable findings are binding on the Board. Further, as CAD and leukemia are chronic disorders under § 3.309, both direct and presumptive service connection will be addressed.

Turning to direct service connection, while the AOJ rendered favorable findings that the Veteran was diagnosed with CAD in 2017, myocardial infarction in 2018, and CML in 2016, the medical evidence showed the first diagnosis of CAD was in 2015, myocardial infarction in 2012, and CML in 2015. Nevertheless, current disorders are shown, and the first element of direct service connection is met.

As to an in-service incurrence, service treatment records (STRs) are absent of any complaints, diagnoses, or treatment related to a CV disorder or leukemia. Specifically, the Veteran sought treatment for back pain, a left shoulder disorder, and a skin rash, among others but did not report a CV disorder or leukemia or any symptoms reasonably attributed to them. Therefore, the medical evidence does not support the claims for direct service connection.

As to presumptive service connection, a review of the record shows that CAD and CML were not diagnosed in service or within one year after separation from service. Specifically, CAD and CML were diagnosed in 2015, more than 40 years after separation. As to continuity of symptomatology, post-service treatment records are negative for complaints, treatment, or a diagnosis related to CAD or any other CV disorder, or CML for many years after service separation. Specifically, myocardial infarction was not diagnosed until 2012, CAD until 2015, and CML until 2015. Therefore, the medical evidence does not support the claims based on presumptive service connection. 

Acquired Psychiatric Disorder

In an April 2016 statement, the Veteran reported serving as an ambulance driver in-service from 1965-1966. He stated that he would patrol the demilitarized zone in Korea and hear of people being killed. He also recounted an incident where he was called to the scene of an accident after a boy had been hit by a truck. 

However, an acquired psychiatric disorder is not shown. Specifically, clinical records show treatment for a back disorder, knee disorders, hip disorders, CML, and a heart disorder, among others, but are silent as to complaints, diagnoses, or treatment related to an acquired psychiatric disorder. Therefore, the first element of direct service connection is not met, and the medical evidence does not support the claim for service connection. 

Left Knee Disorder

As an initial matter, the AOJ rendered favorable findings that the Veteran was diagnosed with left knee DJD in 2011. Under RAMP, favorable findings are binding on the Board. Further, as DJD is a chronic disorder under § 3.309, both direct and presumptive service connection will be addressed.

Turning first to direct service connection, although the AOJ found that DJD was diagnosed in 2011, the evidence reflects the Veteran was diagnosed with left knee DJD in 2006. Nevertheless, a current disorder is shown, and the first element of direct service connection is met.

As to an in-service incurrence, STRs are absent of any complaints, diagnoses, or treatment related to a left knee disorder. Specifically, the Veteran sought treatment for back pain, a left shoulder disorder, and a skin rash, among others but did not report a left knee disorder. Therefore, the medical evidence does not support the claim for direct service connection.

As to presumptive service connection, a review of the record shows that left knee DJD was not diagnosed in service or within one year after separation from service. Specifically, it was diagnosed in 2006, more than 40 years after separation. 

As to continuity of symptomatology, in May 2006, the Veteran reported that he experienced knee pain since service and worsening over the last five years; however, post-service treatment records are negative for complaints, treatment, or a diagnosis related to DJD or any other left knee disorder for many years after service separation. Specifically, DJD was not noted until 2006. Therefore, the medical evidence does not support the claim for presumptive service connection. 

As to all the claims for service connection, the Board has considered the Veteran’s lay statements that his disorders began in service. He is competent to report symptoms because this requires only personal knowledge, as it comes to him through his senses. However, he is not competent to offer an opinion as to the etiology of his current disorders due to the medical complexity of the matters involved. 

Such competent evidence has been provided by the medical personnel who have examined the Veteran during his current appeal and by service records obtained and associated with the claims file. Here, the Board attaches greater probative weight to the clinical findings than to the lay statements. As such, the appeals are denied.

Earlier Effective Date for a Left Shoulder Disability 

The effective date of an award based on a claim for increase of compensation “shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application.” 38 U.S.C. § 5110(a). Increases are effective on the “earliest date as of which it is factually ascertainable based on all evidence of record that an increase in disability had occurred if a complete claim or intent to file a claim is received within 1 year from such date, otherwise, date of receipt of claim.” 38 C.F.R. § 3.400(o)(2).

The record shows that the Veteran filed an original claim for service connection for a left shoulder disorder in May 1968. The Regional Office (RO) granted service connection in June 1968 and assigned an initial 0 percent (non-compensable) rating effective May 1968, one day after discharge from service. He did not appeal the May 1968 rating decision. 

The next document of record is an October 2015 claim for service connection. The RO construed this as a claim for an increase of the left shoulder disability. In May 2016, the RO granted a 10 percent rating effective October 1, 2012, the date in which this disability had objectively worsened. There were no earlier claims received subsequent to the unappealed June 1968 rating decision which granted service connection for a left shoulder disability.

In the June 2016 notice of disagreement, the Veteran contended that his effective date for a 10 percent rating for a left shoulder disability should be 1968, which corresponds to the effective date of the original claim for service connection. 

The record shows that he filed an initial claim for service connection for his left shoulder disorder in May 1968, and service connection was granted effective one day prior to the date of the May 1968 claim. The current appeal, however, is for an earlier effective date for an increased rating. He did not appeal his assigned rating in June 1968 and that decision became final. 

Further, the Veteran’s left shoulder disability showed worsening beginning in October 2012 when a physical examination showed left shoulder pain if abducted to the neck and degenerative arthritis. As the October 2012 evidence is more than one year from the date of the October 2015 claim, the effective date of this claim has properly been established as October 1, 2012. 

For these reasons, an effective date prior to October 1, 2012, is not warranted for the assignment of a 10 percent rating for the left shoulder disability. Because the preponderance of the evidence is against the appeal for an earlier effective date, the benefit of the doubt doctrine is not for application.

Finally, the Veteran has not raised any other issues, nor have any issues been reasonably raised by the record, for the Board’s consideration. See Doucette v. Shulkin, 28 Vet. App. 366, 369-370 (2017) (confirming that the Board is not required to address issues unless they are specifically raised by the claimant or reasonably raised by the evidence of record).

REASONS FOR REMAND

The issue of entitlement to service connection for back disorder is remanded to correct a duty to assist error that occurred prior to the July 2019 RAMP rating decision on appeal. In the August 2016 application for service connection, prior to his decision to elect the RAMP process, the Veteran argued that a back disorder was secondary to a service connected left shoulder disability. The Regional Office failed to obtain a VA opinion prior to the July 2019 RAMP rating decision on appeal regarding whether the back disorder was caused or aggravated by a service-connected left shoulder disability. Accordingly, an opinion is warranted.

The matter is REMANDED for the following action:

Obtain an addendum opinion from an appropriate clinician regarding whether it is at least as likely as not that a back disorder is caused or aggravated by a left shoulder disability. 

 

 

L. HOWELL

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board D. Ragofsky, Attorney Advisor 

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.